OSCN Found Document:IN THE MATTER OF A.B.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF A.B.
2024 OK CIV APP 1
Case Number: 120893
Decided: 11/29/2023
Mandate Issued: 01/04/2024
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III

Cite as: 2024 OK CIV APP 1, __ P.3d __

 

IN THE MATTER OF A.B. and A.B., ALLEGED DEPRIVED CHILDREN:

STATE OF OKLAHOMA, Petitioner/Appellee,
v.
GINA WHITING, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE JULIE C. DOSS, JUDGE

AFFIRMED AND REMANDED

Shelley L. Levisay, Shawnee, Oklahoma, for Appellant,

Kayla Cannon, TULSA COUNTY PUBLIC DEFENDER'S OFFICE, Tulsa, Oklahoma, for the Minor Children,

Kimberly A. Jantz, TULSA COUNTY DISTRICT ATTORNEY'S OFFICE, Tulsa, Oklahoma, for Appellee.

Bay Mitchell, Chief Judge:

¶1 Respondent/Appellant Gina Whiting (Mother) challenges the termination of her parental rights to her minor children, A.B. and A.B. Mother's rights were terminated after a jury returned verdicts finding it was in the children's best interests to terminate Mother's rights because (1) the children had been in foster care for six of the most recent twelve months and could not be safely returned to Mother's home; (2) there had been a substantial erosion in the children's relationship with Mother due, in part, to Mother's prolonged and unreasonable absence from the children; and (3) Mother had not corrected the conditions that caused the children to be adjudicated deprived -- namely, substance abuse, threat of harm, neglect, environmental neglect, and lack of a safe and stable home. On appeal, Mother argues she was denied due process and a fair trial because the trial was held without her being physically present. She also claims the court abused its discretion by allowing the State to elicit testimony about her unadjudicated criminal offenses.

¶2 We find no due process violations or absence of fair trial. The trial court issued writs of habeas corpus ad testificandum to secure Mother's attendance, and, when the out-of-state facility in which Mother was jailed at the time of trial refused the writs, the court made other reasonable accommodations to ensure Mother could participate. Further, although we agree the court erred by allowing evidence of Mother's arrests, we have "affirmatively ascertained from the record that no harm resulted therefrom." See Matter of K.H., 2021 OK 33, ¶29, 507 P.3d 647, 654 (inherently prejudicial evidentiary error not reversible if affirmatively ascertained that no harm resulted). Accordingly, we affirm. However, we remand with instructions to omit factual findings from the final order that were not made by the jury.

¶3 In March 2020, the Department of Human Services (DHS) placed A.B. and A.B., who were respectively three years and eighteen months old at the time, into emergency custody and the State filed a petition to adjudicate them as deprived, alleging the family's living conditions were inadequate and dangerous, the children lacked medical attention, and there was a threat of harm due to the parents' methamphetamine use. The children were adjudicated deprived on August 6, 2020 based on their parents' substance use, threat of harm, neglect, environmental neglect, and lack of a safe and stable home. Mother's Individualized Service Plan (ISP) was filed the same day.

¶4 Mother made little to no progress on her treatment plan, and in January 2021, she decided to move to Missouri to live with her sister. According to Mother and her sister, the move was prompted by ongoing domestic violence between Mother and the children's father. The children remained in foster care in Oklahoma. Molly Mangan, the DHS permanency specialist assigned to Mother and the children, testified that she and other workers before her struggled to make contact with Mother after she moved to Missouri, and, when they did make contact, their attempts to connect Mother with services in Missouri were largely unsuccessful.

¶5 The State filed motions to terminate Mother's rights on April 14, 2021 and May 20, 2021, claiming Mother failed to correct the above conditions; that there had been a substantial erosion in the children's relationship with Mother due to her prolonged absence; and that termination was warranted based on the children's ages and the length of time they had been in foster care.[1] After a three-day trial, the jury returned verdicts finding it was in A.B. and A.B.'s best interests to terminate Mother's rights based on all three grounds alleged by the State. The trial court entered its order terminating Mother's rights on November 4, 2022.

¶6 On appeal, Mother first argues she was denied due process and her right to a fair trial because she was not able to attend her trial in person. Mother was in jail in Arkansas at the time of trial. Mother petitioned for, and the court issued, two writs of habeas corpus ad testificandum, but the Arkansas facility in which Mother was housed refused to honor them. Accordingly, Mother participated at trial virtually through two laptops -- one placed at the defense table with her attorneys and facing the jury box and one near the witness chair. The court noted that it had ensured Mother could see the witnesses, that the witnesses could see Mother, and that Mother could hear. Mother objected to the court's decision to proceed without her physically present and continues to argue on appeal that it was error for the court to hold her trial without her.

¶7 "An incarcerated parent does not have an absolute constitutional right to be present at a termination hearing[.]" In re K.N.L., 2007 OK CIV APP 22, ¶17, 154 P.3d 1276, 1281. "[I]f through the exercise of reasonable diligence [the parent's] presence cannot be secured within a reasonable time period and alternate effective procedures are available to protect his or her fundamental right to 'meaningful access' and an opportunity to defend[,]" due process requirements are satisfied. Id. The record shows the court and Mother's attorney diligently attempted to secure Mother's in-person attendance. Although Mother complains the court did not inquire or take further action when the Arkansas facility refused the writs, she fails to explain what additional steps the court could have taken. Further, the court employed alternative procedures that were effective at allowing Mother meaningful access to the court and an opportunity to defend. Accordingly, we find no error, constitutional or otherwise, in the court's decision to proceed to trial without Mother being physically present.

¶8 Mother also claims the court abused its discretion by allowing testimony about her unadjudicated offenses. Prior to trial, Mother filed several motions in limine asking the court to exclude evidence of two recent arrests and pending charges in Missouri; evidence of her most-recent arrest and pending charges in Arkansas; and any evidence that would signal Mother was currently in jail. The trial court denied the motions.

¶9 At trial, the State asked Ms. Mangan whether DHS was satisfied that Mother no longer had a drug problem. Ms. Mangan stated, "No," and explained that Mother had only completed one drug test, which was taken at the time of her choice, since the children's removal. The State then asked whether DHS had additional concerns about Mother's relationship to substances or whether there were any incidents during the life of the case that would cause DHS concern. Ms. Mangan replied, "[Mother] has been arrested -- -- ." At this point, Mother's attorney objected, arguing the testimony was hearsay. The court overruled the objection, finding the testimony was being offered to explain why Ms. Mangan formed her opinion, not for the truth of the matter asserted. Ms. Mangan continued and stated, "[Mother] has been arrested three times this past year; all relating to drug charges." Ms. Mangan went on to explain that, although she did not know the specific charges associated with Mother's most-recent arrest, she knew that Mother was found with a meth pipe and marijuana.

¶10 Later, during Mother's cross-examination, the State asked, "Where are you right now?" Mother's attorney objected on two grounds: that it was outside the scope of direct and that it was more prejudicial than probative. The court overruled the objections. The State then asked Mother why she was in jail, how many times she had been arrested for a situation involving methamphetamine, and where and when those arrests occurred. Mother's attorney's continued objections were overruled.

¶11 In support of her claim that the court's decision to admit evidence of her arrests was prejudicial and deprived her of a fair trial, Mother cites In the Matter of K.H., C.H., E.H., and C.H., 2021 OK 33, 507 P.3d 647. The mother and father in that case had four biological children together and informally shared custody of the father's two sons from a previous relationship. Id., ¶¶1-2, 507 P.3d at 649-50. After the parents were accused of and criminally charged with abusing one of the sons, the State filed a petition to adjudicate their biological children as deprived and sought immediate termination of their rights based on shocking and heinous abuse of the children's half-sibling. Id., ¶¶7-9, 507 P.3d at 650. At trial, the State introduced the parents' criminal Information and asked the mother about her arrest, her incarceration, and her charges. Id., ¶¶19-21, 507 P.3d at 652-53. On appeal, the Oklahoma Supreme Court found the court erred by admitting the evidence because it was not relevant and what little probative value it did have was substantially outweighed by the danger of unfair prejudice. Id., ¶¶39-40, 507 P.3d at 656.

¶12 According to the Court, evidentiary errors should be categorized as "inherently prejudicial" or "not inherently prejudicial" to determine whether the error is reversible. Id., ¶¶28-29, 507 P.3d at 653-54. Errors that are not inherently prejudicial should be reviewed to determine the "likelihood that the verdict would have been different had [the errors] not occurred, as measured by the usual criterion of the verdict's support in the evidence." Id., ¶28, 507 P.3d at 653 (citation omitted). Errors that are inherently prejudicial are regarded as reversible error "unless it can be affirmatively ascertained from the record that no harm resulted therefrom." Id., ¶29, 507 P.3d at 653-54 (citation omitted).

¶13 The Court found the trial court's erroneous decision to admit evidence of the parents' criminal child abuse charges was inherently prejudicial because the very nature of the error gave the State "beneficial prejudice." See id., ¶¶29, 41-42, 507 P.3d at 653-54, 656-57.[2] And, because the Court found it "impossible" to affirmatively ascertain from the record that no harm resulted from the admission of the evidence, the Court reversed the termination of the parents' rights and remanded for a new trial. Id., ¶42, 507 P.3d at 657.

¶14 In this case, we agree the court erred by admitting evidence of Mother's arrests. As in Matter of K.H., the danger of unfair prejudice substantially outweighed what little probative value the evidence offered. However, even if we consider the court's error "inherently prejudicial" such that the heightened standard of review for reversibility is triggered, factors that distinguish this case from Matter of K.H. lead us to conclude that the error here is not reversible.[3]

¶15 The State sought termination on only one ground in Matter of K.H., and the Court was concerned that the criminal child abuse charges arose out of the same facts for which the State sought termination but were offered as evidence against the parents in their termination cases before they had been criminally convicted. Matter of K.H., ¶14, 507 P.3d at 651. The Court also found it important that the children's deprived adjudication was tried concurrently with the parental rights termination. Id. 

¶16 This case involves none of the factors the Court found to be particularly distinguishing in Matter of K.H. See id. The children here were separately adjudicated as deprived, and Mother's arrests were subsequent to and thus involved completely different facts from those underlying the children's removal. Further, the State sought termination on three grounds: failure to correct the conditions leading to the children's deprived adjudication, substantial erosion of the parent/child relationship, and the length of time the children had been in foster care without the ability to be safely returned to Mother's home. Thus, unlike Matter of K.H., the grounds for which the State sought termination presented the jury with factual questions that differ from the factual questions involved in Mother's criminal cases. Finally, Mother does not challenge the other abundant evidence supporting the jury's verdicts.

¶17 We have affirmatively ascertained from the record on appeal that, despite the court's admission of prejudicial evidence, Mother otherwise received a fair trial and no harm resulted from the error. The court's order terminating Mother's rights upon the jury's verdicts is affirmed. The order, however, requires slight revision. See In re E.M., 2019 OK CIV APP 30, ¶11, 442 P.3d 1084, 1087. Box B9 (the box for indicating termination based on substantial erosion of the parent/child relationship) includes the following notation: "Natural Mother has seen the children once in person in the last two years and the children no longer understand her as their mother." The jury was the fact-finder in this case, and its verdict did not include this specific finding. The court is instructed to enter a new Order Terminating Parental Rights omitting the extraneous language entered on Box B9.

¶18 AFFIRMED AND REMANDED.

PRINCE, P.J., and BELL, J., concur.

FOOTNOTES

[1] The State pleaded two additional grounds for termination -- that Mother had willfully failed, refused, or neglected to contribute to the children's support for six of the most recent twelve months and that Mother failed to protect the children from abuse that was heinous or shocking -- but dismissed those grounds at trial.

[2] Specifically, the admission of such evidence "harmed [the p]arents' credibility with the jury at the outset of the trial and planted in the jurors' minds [the p]arents' uncertain future with their children." Id., ¶41, 507 P.3d at 656. In addition, admission of the criminal Information informed the jury that the parents had been charged with felony child abuse and "indirectly achieved what a State prosecutor is prohibited from doing in a criminal trial -- giving personal opinions of the accused's guilt." Id., ¶42, 507 P.3d at 656-57.

[3] As noted by the dissent in Matter of K.H., the majority provides little prospective guidance for courts seeking to determine which evidentiary errors are so inherently prejudicial as to trigger the heightened standard of review. Matter of K.H., ¶14, 507 P.3d at 669 (Combs, J., dissenting).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2007 OK CIV APP 22, 154 P.3d 1276, 
IN THE MATTER OF K.N.L.
Discussed

 
2019 OK CIV APP 30, 442 P.3d 1084, 
IN RE THE MATTER OF E.M.
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2021 OK 33, 507 P.3d 647, 
IN THE MATTER OF K. H.
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA